CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

ERIC CHENG (CABN 274118)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
FAX: (415) 436-7234
Eric.Cheng@usdoj.gov

JOHN A. EISENBERG
Assistant Attorney General, National Security Division

CHRISTIAN J. NAUVEL;
Acting Chief, Counterintelligence and Export Control Section

ELI ROSS (ILBN 6321411)
Trial Attorney, National Security Division

950 Pennsylvania Avenue NW
Washington, DC 20530
Tel: (202) 616-5447
Fax: (202) 233-2146
Eli.Ross2@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>(1) LIREN LAI a/k/a "Ryan" Lai, and<br>(2) YUANCE CHEN,<br><br>Defendants. | Case No. 4:25-CR-00186 JST<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Hearing Date: October 30, 2026<br>Hearing Time: 9:30 a.m.<br>Courtroom: 6, 2nd Floor<br><br>Hon. Jon S. Tigar |

# I. INTRODUCTION

Defendants Liren Lai and Yuance Chen knowingly conspired together and with others to act as agents of the People's Republic of China ("PRC")—specifically, by operating under the direction and control of the Ministry of State Security ("MSS"), one of the PRC's intelligence directorates—to facilitate and carry out unlawful clandestine operations in the United States. As part of the conspiracy, Lai and Chen facilitated multiple "dead drop" payments of cash made in exchange for information related to the national security of the United States, gathered intelligence about U.S. military service members and bases, and assisted with efforts to recruit potential assets within the U.S. military. Lai and Chen received and carried out these directives from the MSS, knowing that they were doing so on behalf of MSS intelligence officers of the PRC.

Lai and Chen committed extremely serious crimes and their actions threatened the national security of the United States, warranting the imposition of meaningful custodial sentences. As discussed below, sentences of **48 months** of imprisonment for Chen, and **60 months** of imprisonment for Lai, would be sufficient, but not greater than necessary, to achieve the goals set forth in 18 U.S.C. § 3553(a)(2). Such sentences would reflect the seriousness of the defendants' conduct and serve as general deterrence to others from engaging in similar unlawful conduct in the United States on behalf of a foreign power.

# II. BACKGROUND

## A. People's Republic of China's Intelligence Services – the MSS

The government of the PRC conducts intelligence activities using a variety of sources, and agencies, including its Ministry of State Security ("MSS"). The MSS handles civilian intelligence collection for the PRC, and is responsible for counterintelligence, foreign intelligence, and political security functions. The MSS consists of a central ministry, provincial state security departments, and municipal state security bureaus. Collectively, the MSS has broad powers in the PRC to conduct espionage both domestically and abroad.

Among other things, the MSS and its bureaus focus on identifying and influencing the foreign policy of other countries, including the United States. The MSS and its bureaus seek to obtain information on political, economic, and security policies that might affect the PRC, along with military,

scientific, and technical information of value to the PRC. The MSS and its bureaus are tasked with conducting clandestine and covert human source operations, of which the U.S. is a principal target. The PRC is particularly interested in the U.S. military for the purposes of gaining access to national defense information, typically through U.S. military facility access, as well as recruitment and exploitation of U.S. servicemembers.

### B. Background of Lai and Chen's Involvement with the MSS

Lai is a citizen of the PRC who possessed a B1/B2 visitor visa for the United States, which allowed him to travel freely to the United States. Lai PSR ¶ 15. While in the PRC, he was the CEO of a warehouse business. *Id.* ¶ 59. Chen is a citizen of the PRC who became a legal permanent resident (LPR) in 2019 after marrying a U.S. citizen in 2018. Chen PSR ¶ 16.

Beginning no later than May 2021, Lai and Chen began knowingly acting as agents of the PRC's MSS, joining a complex years-long scheme that attempted to undercut U.S. national security interests. Lai PSR ¶ 20; Chen PSR ¶ 19. The defendants acted as agents of the MSS to facilitate and carry out various clandestine operations in the United States, including by facilitating multiple "dead drop" payments, gathering intelligence about U.S. servicemembers and bases, assisting with efforts to recruit potential assets from within the U.S. military. *Id.* Lai brought Chen into the conspiracy, as the direction Chen received for these tasks initially came from Lai on behalf of the MSS; Chen later received tasks directly from intelligence officers of the MSS as well. *Id.*

### C. Specific Activities on Behalf of the MSS

Lai and Chen knowingly acted under the direction and control of the MSS in the U.S., as they facilitated or participated in MSS-driven operations across the nation. Lai PSR ¶¶ 19, 22-23. Lai began developing Chen as an asset for the MSS in May 2021. Lai PSR ¶ 22. In December 2021, while Lai and Chen were in the PRC, they facilitated a dead drop payment of $10,000 cash in a locker at a recreational facility in Livermore in the Northern District of California, utilizing Chen's spouse as a courier. Lai PSR ¶ 23.

Beginning in 2022, Lai relayed communications between Chen and the MSS via the WeChat application to gather information about Chen's prior experience with U.S. servicemembers and military bases within the United States. Lai PSR ¶ 23. Additionally, Chen provided Lai information regarding

U.S. military bases, servicemen, and recruiting sites. *Id.* Specifically, Chen provided photographs of Navy Base Kitsap in Bremerton, Washington. *Id.*

Beginning in April 2022, Chen gathered information about and contacted an active-duty Navy Employee. Chen PSR ¶ 19. Chen first sent Lai personal identifying information about the Navy Employee. Chen PSR ¶ 21. Chen also maintained possession of two targeting packages containing detailed biographical information about the Navy Employee and another retired member of the military. *Id.*

In March 2023, Lai traveled from the PRC to the United States. Lai PSR ¶ 25. Among other things, at the MSS' direction, Lai provided a cell phone to Chen during this trip to communicate covertly with the MSS. *Id.* Given this directive, Lai delivered a phone to Chen that Chen described as a "state secret." *Id.*

In April and May 2023, Chen provided to the MSS photographs and videos of military recruits or active-duty sailors from inside U.S. Navy Recruiting Station Alhambra in San Gabriel, California. Chen PSR ¶ 21. Chen continued communicating with the Navy Employee and providing information about the Navy Employee to the MSS. Chen PSR ¶ 21.

In 2024 and 2025, Chen traveled to the PRC, where he met with MSS officers and received additional taskings about U.S. service members. Chen PSR ¶ 21.

In April 2025, Lai again traveled from the PRC to the U.S. to carry out various tasks for the MSS. Lai PSR ¶ 28. For example, in May 2025, the MSS directed Lai to drive to Phoenix, Arizona to make a "dead drop" payment of approximately $20,000. *Id.* ¶ 29.

### D. Procedural History

Lai and Chen were arrested on June 27, 2025. On July 1, 2025, a grand jury sitting in the Northern District of California returned a three-count indictment, charging Lai and Chen with violating 18 U.S.C. § 371 (Count One) and 18 U.S.C. § 951 (Counts Two and Three).

Lai made an initial appearance in the Northern District of California on August 11, 2025, where he was ordered detained and has since remained in custody. Lai PSR ¶ 4. Chen made an initial appearance in the Northern District of California on September 11, 2025, where he too was ordered detained and has since remained in custody. Chen PSR ¶ 4.

On December 12, 2025, Lai pled guilty to Counts One and Two of the Indictment. Lai PSR ¶ 2. On February 20, 2026, Chen pled guilty to Counts One and Three of the Indictment. Chen PSR ¶ 2.

Sentencing has been set for both defendants on October 30, 2026.

## III. DISCUSSION

### A. Applicable Law

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should typically begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (3) the need for the sentence imposed to afford adequate deterrence to criminal conduct; and
>
> (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### B. United States Sentencing Guidelines

Under the United States Sentencing Guidelines (U.S.S.G.) § 2X1.1, 18 U.S.C. § 371 (Count 1) applies the base offense level for the substantive offense. Since there is no applicable U.S.S.G. provision for a violation of 18 U.S.C. § 951 (Counts 2 and 3), the Court must impose a sentence guided solely by the statutory factors under 18 U.S.C. § 3553(a).

### C. Sentencing Factors Under 18 U.S.C. § 3553(a)

When weighing the nature and circumstances of Lai and Chen's conduct, their history and characteristics, and also the applicable sentencing objectives described herein, the government submits

that a **48-month** term of imprisonment for Chen and a **60-month** term of imprisonment for Lai would appropriately reflect the statutory factors set forth in 18 U.S.C. § 3553(a) and be sufficient, but not greater than necessary, to achieve the goals set forth in 18 U.S.C. § 3553(a)(2). Additionally, this would reflect sentences imposed on other similarly situated defendants and would avoid unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6).

**1. Nature and Circumstances of the Offense**

Lai and Chen knowingly and willingly worked for a foreign intelligence service on U.S. soil, an undisputedly serious crime. Lai and Chen's work as agents for the PRC's intelligence services—specifically, the MSS—follows long-running efforts by the PRC to undermine U.S. national security. The PRC has historically sought to obtain sensitive U.S. information, and such efforts to gather this information can jeopardize the lives of U.S. personnel abroad, destabilize U.S. economic prosperity, and invite interference into U.S. democratic institutions.[1]

Specifically, Lai and Chen's willingness to carry out a litany of MSS-driven operations in the United States, including facilitating dead-drop payments and scouting U.S. military bases and personnel, raises significant national security risks. Not only did Lai and Chen participate in intelligence gathering, but they actively furthered ongoing MSS activities by facilitating cash payments to others operating in the United States for the MSS through "dead drops." The government has a clear interest in preventing the PRC's clandestine operational activities in the United States for national security reasons.

Lai and Chen also traveled to and from the PRC to meet with MSS officials and/or discuss potential operations, and to carry out operations in the United States. For example, from the PRC, Lai and Chen facilitated a dead drop of $10,000 on behalf of the MSS in the United States as a payment in exchange for information related to the national security of the United States. In the United States, Lai traveled across the U.S. to further MSS operations, facilitating a dead drop payment of tens of thousands of dollars in Phoenix, Arizona that would service ongoing clandestine operations in the United States.

[1] *See* U.S. Internet Crime Complaint Center, "Safeguarding Our Secrets," June 3, 2026, *available at* https://www.ic3.gov/CSA/2026/260603.pdf.

Additionally, there is a heightened interest in safeguarding the United States military and its personnel. Indeed, protecting this information is critical to the strategic and operational success of the U.S. military and the safety of the servicemen and their families.

But Lai and Chen undercut this interest by scouting U.S. military bases and specifically targeting U.S. service members for recruitment. At the initial direction of Lai, then directly on behalf of the MSS, Chen made connections military personnel, gathered information, collected photographs, and recorded videos of U.S. military personnel and facilities. Chen collected personal identifying information about servicemen, gathered photos from a military base in Washington, and received photographs and videos of the inside of a recruitment center in California.

Lai and Chen's actions created substantial national security risks to the United States. Had the government not disrupted this scheme, it is likely that Lai and Chen would have continued to facilitate dead drops, gather more sensitive information about the U.S. military, and bolster efforts to recruit U.S. service members for the MSS. This factor weighs heavily in favor of a meaningful custodial sentence.

**2. History and Characteristics**

Neither Lai nor Chen's history and characteristics warrant a more lenient sentence. Both are educated individuals with bachelor's degrees; Lai in business management, and Chen in electric computer engineering. Lai PSR ¶ 57; Chen PSR ¶ 57. As such, Lai and Chen were afforded every opportunity to create a successful and lawful future.

Beginning in 2014, Lai worked as the CEO of a warehousing company called Foshan City Nanhai Xianghao Trading Co., Ltd. Lai PSR ¶ 59. Prior to running his own business, he held other jobs as a project manager and an assistant engineer. *Id.* Chen likewise owned a warehouse company from 2018 to 2024, and held other professional jobs prior to running his own business. Chen PSR ¶¶ 61-65.

The defendants' education and employment history demonstrate that they had the capacity to earn a lawful salary. Instead, Lai and Chen elected to act unlawfully as an agents of the PRC in the United States.

On many occasions, Lai and Chen demonstrated their understanding of the sophistication of the scheme and the risks associated with gathering sensitive information. Even so, they engaged in a years-

long scheme guided by the MSS. Both Lai and Chen knew what they were doing. Accordingly, Lai and Chen's history and characteristics do not warrant a lenient sentence.

**3. The Need to Afford Adequate Deterrence**

The government seeks meaningful custodial sentences in this case for general deterrence against individuals participating in schemes such as this that threaten the national security of the United States. The PRC historically presents one of the most challenging foreign intelligence threats to U.S. national security.[2] As exemplified in this case, such foreign intelligence agencies work with "co-optees" like Lai and Chen to help broker relationships, recruit sources, and disseminate information back to the foreign government.

Imposing a significant term of imprisonment on agents of the MSS such as Lai and Chen will deter other individuals from becoming similar conduits of information and recruitment for foreign intelligence services. Cases such as this one that are detected, disrupted, and prosecuted must send a strong message that acting on behalf of a foreign intelligence entity in the U.S. has serious consequences. As seen in this case, foreign intelligence services like the MSS engage in complex planning, concealment, and execution (such as with covert communications devices) which make schemes sophisticated and difficult to detect. Significant sentences will send a message that these schemes will be met with harsh consequences.

Deterrence and promoting respect for the law should be the principal goals of the Court's sentences in this case. A sentence that is too lenient would convey the wrong message and might convince others that the financial reward of acting as an agent of the PRC in the United States may outweigh the risks.

**4. The Need to Avoid Unwarranted Sentencing Disparities**

Imposing a 48-month sentence for Chen and a 60-month sentence for Lai would align with the punishments imposed by courts in numerous analogous cases, particularly when considering the

---

[2] *See, e.g.*, United States-China Economic and Security Review Commission, "Michelle Van Cleave, Statement for the Record," June 9, 2016, *available at* https://www.uscc.gov/sites/default/files/Michelle%20Van%20Cleave_Written%20Testimony060916.pdf.

specifics of Lai and Chen's conduct. The government acknowledges that sentences for violations of 18 U.S.C. § 951 vary given the lack of an applicable sentencing guideline and the breadth of activity falling within the statute's purview, but provides the following information on similarly-situated defendants who have been found guilty of similar conduct.

**(i) U.S. v. Edward Peng (N.D. Cal. 2020) – 48 months**

Lai and Chen's conduct is most comparable to Edward Peng, a U.S. citizen who engaged in a four-year long scheme at the direction and under the control of MSS officials who was sentenced to **48 months** of imprisonment in this District. *See United States v. Peng*, Case No. 4:19-CR-589 (N.D. Cal. Mar. 16, 2020). Peng conducted dead drops across the United States, notably in California and Georgia, furthering the goals of the MSS. *Id.* In recommending a sentence for Peng, the United States noted: "Given his early plea and assistance, a sentence of 48 months appropriately accounts for said assistance and defendant's personal history and characteristics as identified in the PSIR." *Id.*, Dkt. No. 39. Peng's 48-month sentence of imprisonment should serve as a floor for an appropriate sentence in this case, given the context of Peng's sentencing as noted. *Id.*

Lai and Chen's facilitation of dead drop payments for the MSS made in exchange for information related to the national security of the United States is similar conduct to Peng's. But Lai and Chen also gathered additional information about the U.S. military and worked on recruiting potential assets with ties to the U.S. military for the MSS. Gathering such intelligence and exploiting members of the U.S. military to gain sensitive information could have provided the PRC with detailed information about national defense, personally identifying information belonging to servicemen, and locations of U.S. assets, among other things. Chen should receive a sentence no less than Peng's 48 months given the similarities of the schemes and Chen's additional misconduct, and Lai's recruitment of Chen to the conspiracy on behalf of the MSS warrants a more severe sentence than 48 months.

**(ii) U.S. v. Ji Chaoqun (N.D. Ill. 2023) – 96 months**

The severity of recruiting potential assets for the MSS, and the sensitivity of revealing information related to the U.S. military to the PRC, is likewise demonstrated in *United States v. Ji Chaoqun*, 107 F.4th 715 (7th Cir. 2024). Ji Chaoqun was sentenced to **96 months** of imprisonment for acting as an agent of a foreign government at the direction of the MSS to gather information about

individuals for recruitment by the MSS, and attempting to gain greater access to national defense information as he enlisted to become a member of the U.S. military.

Here, Lai and Chen similarly worked on gaining intelligence on military property and personnel on behalf of the MSS, and Chen's alleged military connections were likewise of interest to the MSS. However, Ji Chaoqun's conduct could be considered more severe than that of Lai and Chen, such that 96 months could serve as a ceiling over the appropriate sentences in this case.

**(iii) U.S. v. Pauken (E.D. Va. 2026) – 24 months**

In *United States v. Pauken,* Pauken similarly worked at the direction and control of the PRC intelligence services to recruit human sources in the United States and gather sensitive information, and he was sentenced to **24 months** of imprisonment. Case No. 1:26-CR-103-LMB (E.D. Va. June 4, 2026). Unlike Lai and Chen, however, Pauken presented considerable mitigation for the Court at sentencing in the form of a history of mental health ailments that made him vulnerable to exploitation by PRC operatives. Pauken also collected non-military information, such as information regarding U.S. politics, campaigns, candidate policy proposals, and U.S.-PRC relations. *Id.* Pauken worked under the direction of his handler, "Cathy", and would communicate on encrypted messaging platforms, or meet in-person.

By comparison, Lai and Chen's operations warrant a greater sentence than imposed in *Pauken* because of the sophisticated tradecraft demonstrated and the targeting of U.S. military information. While Pauken similarly was tasked with recruiting potential assets, the conspiracy here specifically targeted individuals with military connections who could in-turn recruit those servicemen to provide the PRC with national defense information. While Pauken was beholden to the orders given by an MSS officer, Lai and Chen had heightened levels of initiative and control, routinely traveling to China to discuss potential operations with MSS leaders. Furthermore, unlike Pauken, Lai and Chen also handled tens of thousands of dollars to facilitate "dead drops" of cash payments across the United States to further MSS objectives. Lai and Chen's direct involvement in discussions and operational efforts indicate a greater understanding and involvement on behalf of the MSS in the United States, necessitating more severe sentences than that in Pauken.

//

//

**D. Supervised Release**

The government also recommends that the Court impose three-year terms of supervised release with the conditions recommended in the PSR to follow any custodial sentence imposed, given the nature and severity of the crimes at issue and need for deterrence. The expanded suspicionless search condition agreed to by the parties is appropriate to serve the interests of specific deterrence and rehabilitation given Lai and Chen's use of electronic devices and communications in carrying out unlawful tasks on behalf of the MSS.

## IV. CONCLUSION

Lai and Chen engaged in a sophisticated scheme that included carrying out "dead drops" to further the objectives of the MSS in the United States—payments of cash in exchange for information related to the national security of the United States—and capturing information related to the U.S. military to provide to the MSS, even potentially infiltrating the U.S. military by recruiting assets for the MSS. This long-running conduct was extremely serious and threatened the national security of the United States.

For the foregoing reasons, the government respectfully submits that appropriate sentences with consideration of the 18 U.S.C. § 3553(a) factors are: (1) Liren Lai: 60 months of imprisonment, 36 months of supervised release, and a $100 special assessment; and (2) Yuance Chen: 48 months of imprisonment, 36 months of supervised release, and a $100 special assessment.

DATED: October 23, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/
ERIC CHENG
Assistant United States Attorney

/s/
ELI ROSS
Trial Attorney, National Security Division